**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-23-01091-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Dennis Lawrence, et al., | |
| Defendants. | |

On February 4, 2025, this Court issued an order summarizing the status of this case as follows:

> In this case, the United States filed a seven-count complaint. (Doc. 1). In short summary, the United States seeks to foreclose on a piece of real property to satisfy some outstanding tax debts of some of the Defendants.
> The United States has reached a resolution of counts one through six with the interested Defendants. (Docs. 36 and 47). What remains pending is count seven: to foreclose the federal tax liens on the subject real property. (Doc. 1 at 14). The United States has reached a resolution of count seven with all but one Defendant. (Docs. 36 and 47). To attempt to reduce the foregoing resolutions to judgment, the United States has moved for a partial judgment pursuant to Federal Rule of Civil Procedure 54(b). (Doc. 47).
> The unresolved Defendant, PennyMac Loan Services LLC ("PennyMac"), opposes the entry of a Rule 54(b) judgment. (Doc. 48). PennyMac undisputedly has a lien on the property the United States seeks to foreclose. PennyMac opposes the Rule 54(b) judgment because such a judgment on count seven against the Lawrence Defendants would permit foreclosure of the property–which PennyMac argues would extinguish its priority lien on the property.
> The United States disputes whether PennyMac's lien would be extinguished. (*See generally* Doc. 60). Instead, the United States asserts that it will stipulate that PennyMac's lien would be satisfied first out of any sale proceeds. (*Id.*). Further, the United States represents that certain Lawrence Defendants will be allowed to keep the real property during a forbearance

period[1] prior to sale, and that those Defendants will be required to make the mortgage payments and pay the real property taxes. (Doc. 47 at 4; Doc. 60 at 3 (also stating that the Lawrence Defendants must "maintain" the property)). Alternatively, the United States asserts that it will pay the property taxes as necessary. (Doc. 60 at 6).

(Doc. 63 at 1-2) (footnote in original).

The Court then summarized the United States' proposed resolution as follows:

…as the Court understands it, the United States will foreclose upon receiving a Court order. The Lawrences will have a life estate in the property, during which the Lawrences must pay the mortgage (which the United States says is not delinquent). (Doc. 60 at 7; 8). If the Lawrences default on the mortgage, they forfeit their life estate and the United States will sell the property. (*Id*.) The United States will stipulate that PennyMac will be paid first out of the sale proceeds. (Doc. 60 at 8 ("Pennymac will be paid from the proceeds of a sale and as stated above, the United States will agree that Pennymac's deed of trust is senior to its federal tax liens.")). The amount PennyMac will be paid cannot be determined today because today's outstanding principal balance will be reduced by whatever principal payments are made via the mortgage payments during the period of the life estate.

(*Id*. at 2-3).

The Court then required PennyMac to file a reply in support of its motion for summary judgment to address why the foregoing potential resolution is unacceptable. (*Id*.). PennyMac has timely filed the required reply and continues to assert that its "priority" in the property must be determined. (Doc. 64).

PennyMac's reply contains the following statement: "…it is undisputed Pennymac's deed of trust has priority over the IRS's tax liens…." (Doc. 64 at 2). This statement is inconsistent with this Court's understanding of the record. Specifically, the Court understands that to *settle* this case, the IRS has agreed to *stipulate* that PennyMac's lien has priority over the IRS tax liens. However, in the absence of a settlement, the IRS has two arguments that PennyMac should not be paid "first."

First, the IRS argues that it *may*, but is not required, to recognize the senior interest of a purchase money mortgage. (Doc. 60 at 5). Second, the IRS argues that regardless of whether the IRS or PennyMac has a superior lien, by statute the IRS must pay costs and

---

[1] The forbearance period effectively gives certain Lawrence Defendants a life estate in the real property subject to certain conditions. (Doc. 49 at 6).

- 2 -

state property taxes first out of any sale proceeds; thus, PennyMac cannot have "first" priority. (Doc. 60 at 6).

Because PennyMac continues to press that its "priority" must be determined, and because that priority is intertwined with all other interests in the property, the Court cannot grant a Federal Rule of Civil Procedure 54(b) judgment. Specifically, for this Court to find there is "no just reason for delay" such that it should enter judgment under Rule 54(b) the Court must weigh certain considerations.

> First, the Court must determine whether it is "the 'appropriate time'" to appeal. *Curtiss-Wright Corp.*, 446 U.S. at 8 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956)). To do so, the Court must first assess "juridical concerns," such as "the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Id.* at 10. Then, the Court exercises extraordinarily broad discretion to weigh the equities of the case before it. *Id.* at 10–11. "Whether a final decision on a claim is ready for appeal is a different inquiry from the equities involved, for consideration of judicial administrative interests 'is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals.'" *Wood*, 422 F.3d at 878 (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8).
> "Juridical concerns" counsel against granting Rule 54(b) certification, where the "legal right to relief stems largely from the same set of facts and would give rise to successive appeals that would turn largely on identical, and interrelated, facts." *Wood*, 422 F.3d at 880. "A similarity of legal or factual issues will weigh heavily against entry of judgment under the [R]ule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result . . . ." *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981). Indeed, due to its crushing caseload, the Ninth Circuit Court of Appeals simply "cannot afford the luxury of reviewing the same set of facts in a routine case more than once without a seriously important reason." *Wood*, 422 F.3d at 882.

*Gomez v. EOS CCA*, CV 18-2740-PHX-JAT (Doc. 86 at 2-3) (D. Ariz. Aug. 12, 2020) (footnote omitted).

As discussed more fully below and in this Court's order at Doc. 63, this Court cannot resolve the interests of the Lawrences and the IRS in this property without resolving PennyMac's interests. Thus, a partial judgment under Rule 54(b) would run afoul of the policy against piecemeal appeals. Accordingly, the IRS's request for a Rule 54(b) judgment (Doc. 47) and the motion for judgment against only the Lawrence Defendants (Doc. 36) will be denied.

To clarify the Court's prior understanding of this case, PennyMac's true objection

1 to the settlement is that once the IRS forecloses, PennyMac's *right to foreclose* will be extinguished (not its right to payment). (Doc. 64). PennyMac complains that hypothetically, even after the forbearance period ends (either because the Lawrences leave the property or because the Lawrences cease making their mortgage payments), the IRS could choose to not proceed with a sale for an unspecified period of time, leaving PennyMac with no recourse to receive payment in a timely manner. Thus, PennyMac seemingly seeks some hybrid approach wherein the IRS is allowed to foreclose, but then PennyMac's lien would be reinstated such that PennyMac retains a right to foreclose on the IRS once it is the owner of the property. This is not a remedy the IRS seeks, nor one the Court is inclined to craft.

Instead, the remedy the Court can provide is adjudication of the actual counts of the complaint, including Count VII (the foreclosure count). The Court's ruling on such count would not include any of the settlement options heretofore discussed. Instead, the IRS may seek immediate foreclosure against the Lawrence Defendants (which the Lawrence Defendants may choose to oppose) and the IRS can argue for its priority over PennyMac. In other words, if this case proceeds to Court adjudication, the IRS's offered compromise positions for purposes of settlement would not bind the IRS.

Thus, to allow this case to proceed to resolution, and with the understanding that ruling on PennyMac's motion for summary judgment implicates all parties' interests in Count VII, the Court will direct the IRS to file a motion for summary judgment seeking final resolution of all counts in this case. The IRS may move for summary judgment arguing that PennyMac should be bound by the IRS's settlement with the Lawrences. However, the IRS MUST (even if it is in the alternative) move for summary judgment asserting its argument to foreclosure in the event the Court determines that PennyMac can block the IRS's settlement with the Lawrences. Specifically, the IRS must argue for its proposed resolution of this case if this case proceeds to foreclosure (the remedy sought in Count VII) now. Because this would be inconsistent with the settlement agreement, all Defendants (including the Lawrences) may oppose summary judgment.

Based on the foregoing,

**IT IS ORDERED** that the Motion for Rule 54(b) judgment (Doc. 47) is denied.

**IT IS FURTHER ORDERED** that the motion for judgment against the Lawrence Defendants (Doc. 36) is denied without prejudice.

**IT IS FURTHER ORDERED** that within 14 days of the date of this Order, the IRS must move for summary judgment against all Defendants as specified above.

Dated this 18th day of February, 2025.

James A. Teilborg
Senior United States District Judge