**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Dennis Lawrence, et al.,<br><br>Defendants. | No. CV-23-01091-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant Pennymac Loan Services LLC's ("Pennymac") motion for summary judgment, (Doc. 50), and Plaintiff United States of America's motion for summary judgment, (Doc. 69), both of which are fully briefed (Docs. 60, 64, 71, 73). The Court finds this case suitable for decision without oral argument. *See* LRCiv 7.2(f).

## I. BACKGROUND

### a. Factual

The following facts are undisputed: Dennis and Melissa Lawrence ("the Lawrences") failed to file federal income tax returns from 2002 to 2007 and failed to pay owed tax debts from 2008 to 2012. As a result, the United States filed numerous federal tax liens against the Lawrences' property, "reflect[ing] tax assessments against the Lawrences, as individuals and collectively, for the years 2002 to 2012." (Doc. 72 at 6). The Lawrences bought their property with a loan from Evolve Bank and Trust. The loan is secured by a deed of trust that names Pennymac as the beneficiary.

### b. Procedural

On June 13, 2023, the United States filed a seven-count complaint. In short summary, the United States seeks to foreclose on the Lawrences' property to satisfy the Lawrences' outstanding tax debts. (Doc. 1). The remaining defendants are the Lawrences and Pennymac. (*See* Docs. 22, 23, 29, 41).

The United States entered a settlement agreement with the Lawrences. (Doc. 71-5 at 5). The agreement allegedly "allow[s] the Lawrences to keep the property as a life estate, avoiding the [United States'] foreclosure so long as certain conditions are met." (Doc. 72 at 6). Although "the [United States] informed Pennymac that it reached an agreement with the Lawrences," the United States did not provide Pennymac with a copy of the agreement, nor did Pennymac ask for one. (Doc. 61 at 2-3; Doc. 72 at 6; Doc. 71-5 at 3). Nonetheless, it is undisputed that the settlement agreement exists, the United States informed Pennymac of the existence of the agreement, and the agreement permits the Lawrences "to stay on the property subject to the terms of the agreement." (Doc. 71-5 at 5).

Pennymac moves for summary judgment on the only claim pending against Pennymac: count VII, foreclosure on the federal tax liens on the subject real property. (Doc. 50). The United States moves for summary judgment on all remaining claims: Counts I to VI against the Lawrences and Count VII against Pennymac. (Doc. 69).

## II. LEGAL STANDARDS

### a. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co.*, Inc., 210 F.3d 1099,

1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see also Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see also* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

**III.   DISCUSSION**

    **a.  Settlement Agreement**

As a threshold issue, the Court will proceed with summary judgment analysis as if the settlement agreement between the United States and the Lawrences does not exist because, procedurally speaking, it does not. No settlement agreement has been presented to the Court.

### b. Counts I, II, III

The United States argues it is entitled to summary judgment on the first three counts, wherein the United States seeks to reduce federal tax assessments to judgments against Dennis Lawrence (Count I), Melissa Lawrence (Count II), and the Lawrences jointly (Count III). (Doc. 1 at 8-9; Doc. 69 at 5-7). The Lawrences did not file a response.

"In an action to collect tax, the government bears the initial burden of proof. The government, however, may satisfy this initial burden by introducing into evidence its assessment of taxes due." *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990). When the government presents a Form 4340 Certificate of Assessments and Payments, there is a presumption that the tax was validly assessed. *Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993); *see also Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) ("Official certificates, such as Form 4340, can constitute proof of the fact that the [tax] assessments were actually made.").

Here, the United States has met its burden. The Lawrences admit the allegations and do not dispute the validity of the taxes assessed against them, (Doc. 9 at 2-3), and the United States submitted copies of Forms 4340, (Docs. 69-2, 69-3, 69-4, 69-16), along with additional, relevant evidence, (Docs. 69-11, 69-12, 69-13). For these reasons, the Court grants summary judgment to the United States on Counts I, II, and III.

### c. Counts IV, V, VI

Counts IV, V, and VI have to do with the Bull Holdings Trust and whether it holds title to the property. (Doc. 1 at 9-13). After the United States brought this suit, the Bull Holdings Trust executed a quitclaim deed transferring any interest it may have held in the property back to the Lawrences as joint tenants. (Doc. 69-15 (the deed)). The relief sought in Counts IV, V, and VI is thereby moot.[1]

---

[1] Count IV asks the Court to "determine that the Bull Holdings Trust holds title to the Subject Property subject to the United States' federal tax liens." (Doc. 1 at 9). Count V asks the Court to "determine that the Bull Holdings Trust holds title to the subject property as nominee and/or alter ego of Dennis and Melissa Lawrence." (Doc. 1 at 11). Because the Trust no longer holds title, the relief sought in Counts IV and V is moot. Count VI asks the Court to "set aside any purported transfer or encumbrance of the subject property to the Bull Holdings Trust as fraudulent." (Doc. 1 at 12). The Court need not set aside the transfer because the Trust already transferred any interest it had back to the Lawrences.

### d. Count VII

In Count VII, the United States asks the Court to "foreclose the federal tax liens on the real property" under 26 U.S.C. § 7403(c). (Doc. 1 at 14). Both Pennymac and the United States filed for summary judgment on Count VII. (Docs. 50, 69). Generally, 26 U.S.C. § 7403 permits the United States to file a civil action to enforce its lien(s). After the United States files such an action, the Court is directed to "adjudicate all matters involved [] and [] determine the merits of all claims to and liens upon the property." 26 U.S.C. § 7403(c). "[I]f the court concludes the United States has a 'claim or interest,' it will generally be obliged to 'decree a sale of such property.'" *United States v. Allahyari*, 980 F.3d 684, 693 (9th Cir. 2020).

Here, the United States has clearly established a "claim or interest" to the Lawrences' property, and Pennymac does not dispute that this Court may order the United States to foreclose on the property. (Doc. 71 at 2 ("Pennymac does not dispute that 26 U.S.C. § 7403(c) permits [an order allowing the United States to foreclose on the subject property] but any judgment must also affirm Pennymac's first lien interest.")). Thus, it seems that there is no dispute that the Court may order a judicial sale and, in fact, is "obliged" to do so.[2] The remaining issues seemingly surround the exact terms of such a sale.

As indicated above, Pennymac asks that if the Court enters a decree of sale pursuant to § 7403(c) that the Court also affirm "that Pennymac's lien remains senior on the property." (Doc. 71 at 7). The United States agrees that Pennymac has a senior interest in the subject property. (Doc. 69 at 10). However, it is the Court's understanding that entering a decree of sale under Section 7403(c) "extinguishe[s] not only the interests of the person liable to pay the tax, *but also any other interests that had attached to the property*." United

---

[2] Because Pennymac agrees that 26 U.S.C. § 7403(c) permits "an order allowing [the United States] to foreclose on the subject property pursuant to its tax liens," (Doc. 71 at 2), the Court need not engage in an analysis of whether Pennymac's third-party interests fall within the narrow set of "special circumstances" that outweighs "the Government's paramount interest in prompt and certain collection of delinquent taxes" such that the Court should decline to force the sale authorized by § 7403. *United States v. Rodgers*, 461 U.S. 677, 711 (1983).

*States v. Rodgers*, 461 U.S. 677, 694 (1983) (emphasis added). Nonetheless, the Court is inclined to specify the order of the distribution of proceeds of the sale.[3] If such a specification is desired, the United States should include relevant language in its proposed form of judgment, as discussed below.

Separately, the Court also notes that Pennymac asks the Court to "affirm" that Pennymac's lien "remains fully in effect—and independently enforceable—until the IRS's foreclosure occurs." (Doc. 71 at 3). As the Court has already explained, (Doc. 66 at 4), this hybrid approach—in which Pennymac's lien would reattach to the property post-foreclosure by the United States such that Pennymac would retain a right to foreclose on the United States—is not a remedy the United States seeks nor one the Court is inclined, or legally permitted, to craft.

In ordering a judicial sale, the Court directs the "terms and conditions." 28 U.S.C. § 2001(a). However, here, the Court is unclear as to the "terms and conditions" sought by the United States. First, the United States notes that it "has attempted to negotiate a settlement wherein [the Lawrences], in exchange for compliance with the United States' terms, would be permitted to remain on the Subject Property provided they maintain the Subject Property." (Doc. 69 at 9). Based on that settlement agreement, the United States asks the Court to "enter judgment on Count VII for the United States, *while also allowing the life estate*." (Doc. 69 at 9 (emphasis added)). But in its conclusion, the United States makes no mention of the Lawrences' life estate and instead asks the Court "grant this motion and enter summary judgment . . . [t]hat the Subject Property *be sold . . . subject to the asserted above*." (Doc. 69 at 14-15 (emphasis added)). This language raises a few concerns. First, the language is in passive voice and does not identify the actor. Second, there is no timing included.[4] Hypothetically, if the Court uses such language, this case

---

[3] It appears undisputed that the distribution order would be: (1) Maricopa County costs and any taxes, (2) Pennymac, (3) the United States, (4) the Lawrences. (Doc. 69 at 11).

[4] Other district courts in the Ninth Circuit have tied the timing of a judicial sale to the end of a life estate. *See, e.g., United States v. Wight*, No. C16-1556-JCC, 2018 WL 2849773, at *2 (W.D. Wash. June 11, 2018) ("The tax liens are foreclosed and the property shall be sold once [the defendant's] life estate terminates."); *United States v. Victory*, CV 22-645-PHX-JAT (D. Ariz. April 21, 2023).

- 6 -

could remain open indefinitely. Third, it is unclear what "subject to the asserted above" references. As a result, the United States must file a proposed form of judgment. Pennymac may object, as detailed below.

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** Defendant Pennymac's motion for summary judgment, (Doc. 50), is **DENIED** and the United States' motion for summary judgment, (Doc. 69), is **GRANTED** as specified above.

**IT IS FURTHER ORDERED** that within ten (10) days, the United States must file a proposed form of judgment that carries out this Order. Pennymac may object to the proposed form of judgment within ten (10) days of when it is submitted.[5] If Pennymac objects, the United States may reply to the objection within five (5) days of when the objection is filed.

Dated this 12th day of May, 2025.

James A. Teilborg
Senior United States District Judge

---

[5] If the United States renews its request for a life estate in its proposed form of judgment and Pennymac plans to object, Pennymac must first review the Order at Document 20 in *United States v. Victory*, CV 22-645-PHX-JAT (D. Ariz. April 21, 2023). In any objection to a life estate, Pennymac must explain why its interests are not adequately protected if the terms of the life estate are in this Court's judgment. Specifically, Pennymac must explain why a motion to enforce the judgment would be inadequate to protect its interest in the timing of the sale. Furthermore, Pennymac must also address the United States' argument that Pennymac's only recourse to enforce its interests is by seeking relief in this case (in other words, the United States' argument that non-judicial foreclosure was unavailable to Pennymac once this case was initiated). Finally, if Pennymac objects to the United States' proposed form of judgment, Pennymac must submit its own proposed for of judgment consistent with the law and this Order.